**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

Chapter 11
Case No.: 18-18906-JKO

4465 SW 34 Terrace "LLC",

    Debtor.

_____/

**BSI FINANCIAL SERVICES, AS SERVICING AGENT**
**FOR HMC ASSETS, LLC, SOLELY IN ITS CAPACITY OF CIVIC**
**NPL TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**TO ENFORCE FINAL JUDGMENT OF MORTGAGE FORECLOSURE,**
**OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

**Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(C), be deemed to have consented to the entry of an order granting the relief requested in the motion.**

**BSI FINANCIAL SERVICES, AS SERVICING AGENT FOR HMC ASSETS, LLC, SOLELY IN ITS CAPACITY OF CIVIC NPL TRUST** ("Secured Creditor" and/or "HMC Assets LLC"), its successor and/or assigns, by its undersigned counsel hereby files this Motion for Relief From the Automatic Stay to Enforce Final Judgment of Foreclosure, or, in the Alternative, For Adequate Protection pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014 to lift the automatic stay imposed by 11 U.S.C. § 362(a) for cause under 11 U.S.C. § 362(d), or in the alternative, for adequate protection pursuant to 11 U.S.C. § 361, to exercise its non-bankruptcy rights with respect to certain real properties mortgaged to Secured Creditor.  In support thereof, the Secured Creditor states as follows:

**JURISDICTION AND VENUE**

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## SUMMARY OF THE RELIEF SOUGHT

By this Motion, Secured Creditor seeks relief from the automatic stay under 11 U.S.C. § 362(a) pursuant to: (i) 11 U.S.C. § 362(d)(1), because "cause" exists as a result of Secured Creditor not receiving adequate protection for its secured interest in the real properties located at *(i) 2220 N. 57th Way, Hollywood, FL 33021, (ii) 5600 Farragut Street, Hollywood, FL 33021, (ii) 5606 Farragut Street, Hollywood, FL 33021, (iv) 5601 Harding Street, Hollywood, FL 33021, and (v) 4465 S.W. 34th Terrace, Fort Lauderdale, FL 33312* (collectively the "Properties") securing the obligations due and owing to Secured Creditor; or, alternatively, (ii) 11 U.S.C. § 362(d)(1), because the Debtor has little to no equity in the Properties and, (ii) the Properties are not necessary for an effective reorganization.  If relief from the automatic stay is not granted, in the alternative, this Motion seeks an order conditioning the stay on the receipt of adequate protection payments.

## PROCEDURAL BACKGROUND

**A.    The Bankruptcy Filing.**

3.      On July 23, 2018, the debtor 4465 SW 34 Terrace "LLC" (the "Debtor") filed a Voluntary Petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code.

4.      On July 24, 2018, the Court issued the Notice of Incomplete Filings Due ("Notice of Deficiency").   Pursuant to the Notice of Deficiency, the deadline for the Debtor to cure all of the filing deficiencies was August 6, 2018.

5.      On August 7, 2018, the Debtor filed an *Ex-Parte* Motion for Extension of Time to File List of Equity Security Holders, Schedules A – H, Summary of Assets and Liabilities and

Certain Statistical Information, Statement of Financial Affairs, and Declaration Concerning Debtor's Schedules [D.E. 15] (the "Motion to Extend") seeking additional fifteen (15) days to cure filing deficiencies.

6.      As of the filing of this Motion, the Court has not entered an order granting the Motion to Extend.

7.      As of the filing of this Motion, the Debtor's intentions as to the Properties is unknown.

**B.      The secured interests and amounts due on the Property.**

8.      On April 28, 2016, a promissory Note was executed and delivered to lender Civic Financial Services, LLC, in the original principal amount of Eight Hundred Twenty-Five Thousand and 00/100 Dollars ($825,000.00) (the "Note") for the purchase of real the Properties. The amount owed to Secured Creditor is secured by that certain mortgage of even date, recorded as Instrument #113667217 on May 2, 2016 in the Public Records of Broward County, mortgaging and encumbering the Properties as described in the mortgage then owned by and in possession of the Debtor (the "Mortgage").

9.      Secured Creditor is the holder of the Note and the Mortgage by virtue of those Assignment(s) of Mortgage attached to the Mortgage.  The Note, Mortgage and Assignment(s) of Mortgage constitute the Loan Documents (collectively, the "Loan Documents").  A true and correct copies of the Loan Documents is attached to this Motion as **Composite Exhibit "A"**.

10.      On July 12, 2017, a foreclosure action against the Debtor was commenced in the Circuit Court of the Seventeenth Judicial Circuit In & For Broward County, *Foreclosure Case No. CACE-17-014069*, and which said foreclosure action ultimately resulted in the entry of a Final Judgment of Mortgage Foreclosure, entered on April 11, 2018, in the amount of

$1,309,114.24 (the "Final Judgment"). A true and correct copy of the Final Judgment is attached as **Exhibit "B"**.

11.     The Debtor is the owner of and/or holds an interest in the Properties.

12.     The Debtor has committed an Event(s) of Default for failure to pay any monthly installment payment due under the terms of the Note since the inception of the loan.

13.     As of the Petition Date, Secured Creditor is owed $1,309,114.24, plus interest at the prevailing statutory legal interest rate of interest pursuant to Section 55.03, Florida Statutes plus additional attorney's fees and court costs associated with the filing of this instant Motion, as well as any other amounts permitted under the Loan Documents.

14.     The Final Judgment confirms Secured Creditor's interest in the Properties legally described as follows:

**PARCEL 1**

**LOT 8, BLOCK 5, BREEZE HAVEN NO. 2, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 42, PAGE (S) 23, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 2220 N. 57TH WAY, HOLLYWOOD, FL 33021**

**PARCEL 2**

**LOT 19, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5600 FARRAGUT STREET, HOLLYWOOD, FL 33021**

**PARCEL 3**

**LOT 20, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5606 FARRAGUT STREET, HOLLYWOOD, FL 33021**

**PARCEL 4**

**LOT 3, BLOCK 1, DELCREST MANOR NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 61, PAGE 40, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5601 HARDING STREET, HOLLYWOOD, FL 33021**

**PARCEL 5**

**LOT 35, BLOCK 1, DAVIS ILSES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 19, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A/ 4465 S.W. 34TH TERRACE, FORT LAUDERDALE, FL 33312**

15.     Secured Creditor asserts that the Properties lack equity and that the total estimated just/market valuation of the Properties, as per the Broward County Property Appraiser's Office, is $1,082.060.00 (*Parcel 1 @ $248,590.00 + Parcel 2 @ $149,010.00 + Parcel 3 @ $152,560.00 + Parcel 4 @ $201,790.00 + Parcel 5 @ $330,110.00*) (the "Valuations"). Copies of the Valuations are attached hereto as **Composite Exhibit "C"**.

16.     Secured Creditor asserts that the Properties is diminishing and decreasing in value and continues to do so by virtue of the continued use of the Properties by the Debtor and/or unknown parties in interest, without payments to Secured Creditor and given the current market history of the areas in which the Properties are located.

17.     Secured Creditor is entitled to enforce the Final Judgment.

18.     Secured Creditor seeks state court rights with respect to security interest in all of the rental proceeds generated from the Properties.

19.     It is universally accepted that "Section 362(d)(1) and 362(d)(2) are disjunctive; the Court *must* lift the stay if the movant prevails under either of the two grounds." *In re Kaplan*

*Breslaw Ash*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001) (emphasis added); *see also In re Albany Partners*, 749 F.2d 670, 673 (11th Cir. 1984) (noting the alternative grounds for stay relief).

20.     In the present case, Secured Creditor is entitled to stay relief under § 362(d)(1), since Secured Creditor's interest in the Properties is not being adequately protected. Additionally, Secured Creditor is entitled to relief from the stay under § 362(d)(2) because there is no equity in the Properties and the Properties is not necessary for an effective reorganization of the Debtor.

21.     Section 362(d)(1) of the Bankruptcy Code provides for lifting of the automatic stay "for cause," and a movant bears the initial burden to demonstrate that "cause exists."  11 U.S.C. § 362(d)(1).  As explained by the Bankruptcy Courts, "[u]pon motion to lift or modify the automatic stay, burden of proof is a shifting one, with the movant having the burden of making initial showing of 'cause,' and debtor having the ultimate burden of proof on all issues other than debtor's equity in property."  *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999); *see also* 11 U.S.C. § 362(g).

22.     A debtor's failure to provide adequate protection of a creditor's interest is a classic basis for granting relief from the stay for cause.  *See In re McGaughey*, 24 F.3d 904, 906 (7th Cir. 1994); s*ee also, e.g.*, *In re Telegroup*, 237 B.R. at 91.  A creditor can establish its case quantitatively, i.e., by demonstrating the decline in the value of the creditor's interest in the debtor's property.

23.     In the instant case, Secure Creditor is entitled to adequate protection in any form and Secured Creditor's collateral continues to depreciate in value due to continued, uncompensated use by the Debtor.  Accordingly, absent adequate protection, cause exists to lift

the automatic stay so that Secured Creditor may exercise its non-bankruptcy rights with respect to the Property.

24.     If the Court lifts the stay that it should also waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature and Secured Creditor to pursue its *in rem* remedies without further delay.

25.     A copy of a proposed Order is attached hereto as **Exhibit "D"**.

**WHEREFORE**, Secured Creditor, respectfully requests that this Court enter an Order (i) granting Secured Creditor's relief from the automatic stay as to BSI Financial Services, as Servicing Agent for HMC Assets, LLC, solely in its Capacity as Civic NPL Trust, so as to allow Secured Creditor to enforce its *in rem* remedies against the Properties, (ii) providing for state court rights with respect to security interest in the rental proceeds generated by the Properties; (iii) waiving the time requirements under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it may immediately continue and complete its state court foreclosure proceedings, and allow the state court to enter all necessary orders, judgments, and decrees associated therewith, (iv) binding the Debtor in the event of a conversion; and (v) together with such other relief that this Honorable Court may deem just and proper.

**Dated this 7th day of August, 2018.**

Respectfully submitted,

**GHIDOTTI | BERGER, LLP**
*Attorneys for Secured Creditor*
3050 Biscayne Blvd. - Suite 402
Miami, Florida 33137
Telephone: (305) 501.2808
Facsimile: (954) 780.5578

By:    /s/ Chase A. Berger
       Chase A. Berger, Esq.
       Florida Bar No. 083794
       cberger@ghidottiberger.com

## CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)

I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090-1(A).

By:    /s/ Chase A. Berger
        Chase A. Berger, Esq.


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on <u>August 7, 2018</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I also certify that the foregoing document is being served this day, either via transmission of Notice of Electronic Filing generated by CM/ECF or by first class U.S. Mail to all of the interested parties on the attached Mailing Matrix.

By:    /s/ Chase A. Berger
        Chase A. Berger, Esq.

```
Label Matrix for local noticing        4465 SW 34 Terrace L.L.C.              CCAP Auto Lease Ltd
113C-0                                 4465 SW 34 Terrace                     POB 961272
Case 18-18906-JKO                      Ft Lauderdale, FL 33312-5420           Fort Worth, TX 76161-0272
Southern District of Florida
Fort Lauderdale
Mon Jul 30 09:45:17 EDT 2018

City of Hollywood, Florida             Gregory Farrington                    Gregory Farrington
2600 Hollywood Blvd                    POB 5524                              c/o David R Roy, PA
POB 229045                             Fort Lauderdale, FL 33310-5524        4209 N Federal Hwy
Hollywood, FL 33022-9045                                                     Pompano Beach, FL 33064-6048


HMC Assets, LLC                        Lake Park at Forest Ridge HOA, Inc    Office of the US Trustee
c/o Ashland Medley Law, PLLC           c/o Cassandra Racine-Riguad, Esq      51 S.W. 1st Ave.
2856 N University Dr                   Stevens & Goldwyn, PA                 Suite 1204
Coral Springs, FL 33065-1427          2 S University Dr, Ste 329            Miami, FL 33130-1614
                                       Plantation, FL 33324-3339


Rapid Capital Finance, LLC             Stephanie R Dale                     Aron Szabo
11900 Biscayne Blvd, Ste 201           2176 SW Danforth Circle              1401 Sawgrass Corporate Parkway
Miami, FL 33181-2756                   Palm City, FL 34990-7705             Ft Lauderdale, FL 33323-2888



Gregory Farrington                     End of Label Matrix
c/o Stuart M. Gold, Esq.               Mailable recipients     12
5801 NW 151 Street, Ste. 307           Bypassed recipients      0
Miami Lakes, FL 33014-2476             Total                   12
```

# NOTE

Loan Number: ▮▮▮▮▮▮

APRIL 28, 2016                    REDONDO BEACH                    CALIFORNIA
   [Date]                                            [City]                                            [State]

SEE EXHIBIT "B"

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 825,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  CIVIC FINANCIAL SERVICES, LLC


I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        10.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on   JUNE 1            ,
2016    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on        MAY 1, 2017             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  2015 MANHATTAN BEACH BLVD STE 106, REDONDO BEACH, CALIFORNIA 90278
                                              or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   7,218.75          .
** See attached Interest Only Note Addendum.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

DocMagic *eForms*
www.docmagic.com

## COMPOSITE EXHIBIT "A"

Loan Number █████████

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED   *Refer to Appendix G

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be XXXXXXX % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

---

*DocMagic eForms*
*www.docmagic.com*

Loan Number: ▮▮▮▮▮▮▮▮

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

By: _____ (Seal)        By: _____ (Seal)
DONALD SHOFF, MANAGER    -Borrower        JAMES STOTE, MANAGER    -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                              -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                          Page 3 of 3

**DocMagic** *eForms*
www.docmagic.com



Loan ████████

## EXHIBIT "B"

**PARCEL 1**

  2220 N. 57TH WAY

  HOLLYWOOD, FL 33021

  APN # 514112-19-0880

**PARCEL 2**

  5600 FARRAGUT STREET

  HOLLYWOOD, FL 33201

  APN # 514101-02-0910

**PARCEL 3**

  5606 FARRAGUT STREET

  HOLLYWOOD, FL 33201

  APN # 514101-02-0920

**PARCEL 4**

  5601 HARDING STREET

  HOLLYWOOD, FL 33021

  APN # 514112-33-0030

**PARCEL 5**

  4465 SW 34TH TERRACE

  FORT LAUDERDALE, FL 33312

  APN # 504230-04-0320



Loan Number: ▮▮▮▮▮▮▮▮

# INTEREST-ONLY ADDENDUM
# TO FIXED RATE NOTE

Property Address: SEE EXHIBIT "B"

**THIS INTEREST-ONLY ADDENDUM** ("ADDENDUM") is made this ____28th____ day of APRIL, 2016 _____ and is incorporated into and intended to form a part of the Fixed Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to CIVIC FINANCIAL SERVICES, LLC

(the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3(A), 3(B), 4, and 6(A) of the Note. This Addendum does not supersede, replace or revise any other Section of the Note.

## 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first ____11____ months (the "Interest Only Period"), and then will consist of principal and interest.

I will make my monthly payment on the _____ 1st day of each month beginning on JUNE, 2016 _____ . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on MAY 1, 2017 _____ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2015 MANHATTAN BEACH BLVD STE 106, REDONDO BEACH, CALIFORNIA 90278

or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 7,218.75 _____ for the first ____11____ months of this Note, and thereafter will be in the amount of U.S. $832,218.75 _____ . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes.

If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments

consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**       * REFER TO APPENDIX G
     **(A)    Late Charge for Overdue Payments**
         If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be        XXXXXXX % of my overdue payment of interest during the Interest Only Period.  At the end of the Interest Only Period, it will be        XXXXXXX % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

         BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Fixed Rate Note.

4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

By: _David Shoff_____ 4/28/16         By: _____ 4/28/16
Borrower DONALD SHOFF, MANAGER Date          Borrower JAMES STOTE, MANAGER  Date


_____              _____
Borrower                        Date          Borrower                        Date


_____              _____
Borrower                        Date          Borrower                        Date

DocMagic *eForms*
www.docmagic.com

# APPENDIX B    Loan Number ███████
## (to be incorporated into Promissory Note)

## USE OF PROCEEDS
The Borrower shall use the proceeds of the loan solely for the purpose of acquiring the mortgage premises for investment purposes, and the Borrower warrants and represents to the Note Holder that all loan proceeds shall be solely used to acquire the mortgaged Property for investment purposes and that no loan proceeds shall be used for consumer, family or household purposes.

The Borrower further warrants and represents to Note Holder that it shall at no time during the term of the loan inhabit the mortgaged Property.

## INTENDED CONSTRUCTION
Borrower shall declare all contemplated construction and/or renovations to the Property as of the date of loan application. Borrower further agrees to seek authorization from the loan servicer for all future construction and/or renovations requiring a major construction (including, but not limited to, remodeling of the kitchen or bathroom, installation of a new roof or new windows, and additions to the property). For purposes of this paragraph, "major construction" is defined as any alteration to the property that requires demolition, partial or otherwise, of the same, and that is reasonably expected to cost more than $10,000.

Borrower further agree that Borrower will diligence all third parties that Borrower retains for construction and/or renovations to the Property, whether they be contractors or other vendors, and Borrower will further ensure that all such parties are at all times properly licensed and insured as required under applicable law.

## GUARANTEE
For loans with an original loan amount less than one million five hundred thousand dollars ($1,500,000), the Borrower, on behalf of himself or herself, or on behalf of the limited liability company, shall be personally liable for (i) failure to maintain the Property in good condition, (ii) any unauthorized construction on the Property or failure to adhere to relevant building codes (iii) acts of fraud or intentional material misrepresentation, (iv) misapplication or misappropriation of rents, insurance proceeds or condemnation awards, (v) any breach of the environmental laws or covenants contained in the related loan documents and (vi) failure to keep all material licenses, permits and applicable governmental authorizations necessary for its operation of the mortgaged Property in full force and effect at all times. The Borrower, on behalf of himself or herself, or on behalf of the limited liability company, guarantees performance of the loan, and all assets of the Borrower (including, but not limited to, leases and other properties) may be used for that purpose, as permitted by applicable law.

For loans with an original loan amount equal to or in excess of one million five hundred thousand dollars ($1,500,000), the Borrower, on behalf of himself or herself, or on behalf of the limited liability company, shall provide an unconditional personal guaranty for full repayment of the loan.

Furthermore, to the extent permitted by applicable law, the Borrower agrees that in the event of default on a loan of any amount, occurring for any reason, the Lender may unconditionally rely on lease agreements entered into by the Borrower in connection with the subject Property as collateral to further guaranty the Loan, and the Lender shall have the right to, and may, collect on the payments required to be made to the Borrower under said lease agreements.

DocMagic *eForms*
www.docmagic.com

**AUTHORIZATIONS**

The Borrower warrants and represents to the Note Holder that it is qualified to do business in the jurisdiction in which the related mortgaged Property is located and that it shall keep all material licenses, permits and applicable governmental authorizations necessary for its operation of the mortgaged Property in full force and effect at all times.

4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

By: _____   _____   By: _____   _____
Borrower  DONALD SHOFF,        Date        Borrower  JAMES STOTE, MANAGER  Date
MANAGER


_____   _____   _____   _____
Borrower                    Date        Borrower                    Date


_____   _____   _____   _____
Borrower                    Date        Borrower                    Date

This Instrument Prepared By:

After Recording Return To:
CIVIC FINANCIAL SERVICES, INC
2015 MANHATTAN BEACH BLVD STE 106
REDONDO BEACH, CALIFORNIA 90278
Loan Number: ███████████

————— [Space Above This Line For Recording Data] —————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  **"Security Instrument"** means this document, which is dated   APRIL 28, 2016                , together with all Riders to this document.
**(B)**  **"Borrower"** is   4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

Borrower is the mortgagor under this Security Instrument.
**(C)**  **"Lender"** is   CIVIC FINANCIAL SERVICES, LLC

Lender is a                                                                                        organized and existing under the laws of  CALIFORNIA
Lender's address is  2015 MANHATTAN BEACH BLVD STE 106, REDONDO BEACH, CALIFORNIA 90278

Lender is the mortgagee under this Security Instrument.
**(D)**  **"Note"** means the promissory note signed by Borrower and dated   APRIL 28, 2016               .
The Note states that Borrower owes Lender   EIGHT HUNDRED TWENTY-FIVE THOUSAND AND 00/100                                                              Dollars (U.S. $ 825,000.00            )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MAY 1, 2017                 .
**(E)**  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F)**  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

DocMagic *eForms*
www.docmagic.com

**(G)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☒ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |
| | Prepayment Rider |

**(H)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** **"Escrow Items"** means those items that are described in Section 3.

**(L)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                        Page 2 of 15                                        *DocMagic eForms*
www.docmagic.com



**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the

COUNTY          of          BROWARD       :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: SEE EXHIBIT "B"

which currently has the address of    SEE EXHIBIT "B"

[Street]

("Property Address"):

        [City]                   [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
     **1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

---

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01              Page 3 of 15               *DocMagic* ☎*Forms*
www.docmagic.com



treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase



"covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards



including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid



under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                        Page 7 of 15                                        *DocMagic eForms*
www.docmagic.com



Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or



rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice

*DocMagic* *EForms*
*www.docmagic.com*



address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check,



provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any



condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23.  Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.  Attorneys' Fees.**  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25.  Jury Trial Waiver.**  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.


4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

By: _____ (Seal)
DONALD SHOFF, MANAGER       -Borrower
3348 WATER OAKS DRIVE,
HOLLYWOOD, FLORIDA 33021

By: _____ (Seal)
JAMES BTOTE, MANAGER       -Borrower
3348 WATER OAKS DRIVE,
HOLLYWOOD, FLORIDA 33021


_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower


_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower


Witness:

_____
       Sherri Keller

Witness:

_____
       KARLA JENKINS

DocMagic **eForms**
www.docmagic.com

——————————————— [Space Below This Line For Acknowledgment] ———————————————

STATE OF __FLORIDA_____

COUNTY OF __BROWARD_____

    The foregoing instrument was acknowledged before me this __28__ day of __Apal  2016__

by __DONALD SHOFF, MANAGER AND JAMES STOTE, MANAGER_____

_____

_____ ,

who is personally known to me or who has produced __D.L._____
(Type of Identification)

as identification.

_____
Signature

_____
Name of Notary

      (Seal)        _____
Title

_____
Serial Number, if any

SHERRI HELLER
MY COMMISSION # FF 087881
EXPIRES: May 30, 2018
Bonded Thru Notary Public Underwriters



Loan Number: ███████████

Date: APRIL 28, 2016

Property Address:  SEE EXHIBIT "B"

## EXHIBIT "A"

## LEGAL DESCRIPTION

Parcel 1:

Lot 8, Block 5, BREEZE HAVEN NO. 2, according to the Plat thereof, as recorded in Plat Book 42, Page(s) 23, of the Public Records of Broward County, Florida.

Parcel 2:

Lot 19, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 3:

Lot 20, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 4:

Lot 3, Block 1, DELCREST MANOR NO. 2, according to the Plat thereof, recorded in Plat Book 61, Page 40, of the Public Records of Broward County, Florida.

Parcel 5:

Lot 35, Block 1, DAVIS ISLES, according to the plat thereof as recorded in Plat Book 29, Page 19, of the Public Records of Broward County, Florida.

Parcel Identification Number:


A.P.N. # : SEE EXHIBIT "B"



*DocMagic eForms*
*www.docmagic.com*

Loan ██████████

# EXHIBIT "B"

**PARCEL 1**

    **2220 N. 57TH WAY**

    **HOLLYWOOD, FL 33021**

    **APN #** 514112-19-0880

**PARCEL 2**

    **5600 FARRAGUT STREET**

    **HOLLYWOOD, FL 33201**

    **APN #** 514101-02-0910

**PARCEL 3**

    **5606 FARRAGUT STREET**

    **HOLLYWOOD, FL 33201**

    **APN #** 514101-02-0920

**PARCEL 4**

    **5601 HARDING STREET**

    **HOLLYWOOD, FL 33021**

    **APN #** 514112-33-0030

**PARCEL 5**

    **4465 SW 34TH TERRACE**

    **FORT LAUDERDALE, FL 33312**

    **APN #** 504230-04-0320



Loan Number: ██████████

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 28th day of APRIL, 2016 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to CIVIC FINANCIAL SERVICES, LLC

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

SEE EXHIBIT "B"
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.



E.  **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

F.  **BORROWER'S OCCUPANCY.**  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.  **ASSIGNMENT OF LEASES.**  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower:  (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower.  However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.  Any application of Rents shall not cure or waive any default



or invalidate any other right or remedy of Lender.  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

     **I.   CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.


4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY
COMPANY

By: _____ (Seal)
DONALD SHOFF, MANAGER -Borrower

By: _____ (Seal)
JAMES STOTE  MANAGER  -Borrower


_____ (Seal)
-Borrower

_____ (Seal)
-Borrower


_____ (Seal)
-Borrower

_____ (Seal)
-Borrower



## DISCLOSURES FOR BUSINESS PURPOSE LOANS

# APPENDIX I

LOAN NUMBER: ███████████

BORROWER(S): DONALD SHOFF, MANAGER, JAMES STOTE, MANAGER

## PREPAYMENT RIDER

THIS PREPAYMENT RIDER (the "Prepayment Rider") is made this    28           day of
APRIL 2016                , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given
by the undersigned borrower ("Borrower(s)") to secure repayment of Borrower(s) promissory note (the
"Note") in favor of CIVIC FINANCIAL SERVICES, INC. ("Lender"). The Security Instrument encumbers
the Property more specifically described in the Security Instrument and located at
                    SEE EXHIBIT "B"

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 4.   BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of
Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder
in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the
monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this
Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the
Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If
I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly
payment unless the Note Holder agrees in writing to those changes.

**In some cases, a Prepayment may carry a charge,** which will be calculated in accordance with the
following schedule:

- **For Notes with a one-year term,** a minimum of four months' interest payments must be collected
  on the original Note amount, irrespective of when the Note is prepaid. A full prepayment in month
  3 will require a prepayment charge equal to one months' interest payment. Full prepayment in
  month 5 would not require a prepayment charge.

- **For Notes with a two-year term,** a minimum of twelve months' interest payments must be
  collected on the original Note amount, irrespective of when the Note is prepaid. A full prepayment

APPENDIX I
AI2.CST  04/12/16                         Page 1 of 2                    DocMagic eForms
                                                                        www.docmagic.com



in month 11 will require a prepayment charge equal to one months' interest payment. Full prepayment in month 13 would not require a prepayment charge.

- **For Notes with a four-year term,** a minimum of twenty-four months' interest payments must be collected on the original Note amount, irrespective of when the Note is prepaid. A full prepayment in month 23 will require a prepayment charge equal to one months' interest payment. Full prepayment in month 25 would not require a prepayment charge.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY COMPANY

By: _____ (Seal)       By: _____ (Seal)
DONALD SHOFF,                  -Borrower      JAMES STOTE, MANAGER    -Borrower
MANAGER


_____ (Seal)             _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)             _____ (Seal)
                         -Borrower                                   -Borrower

APPENDIX I
AI2.CST  04/12/16                    Page 2 of 2            DocMagic eForms
                                                            www.docmagic.com



Loan Number: ███████████

————————————————— [Space Above This Line For Recording Data] —————————————————

# BALLOON RIDER

THIS BALLOON RIDER is made this  28th day of  APRIL 2016                    , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to  CIVIC FINANCIAL SERVICES, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

SEE EXHIBIT "B"
[Property Address]

The interest rate stated on the Note is called the "Note Rate."  The date of the Note is called the "Note
Date."  I understand the Lender may transfer the Note, Security Instrument and this Rider.  The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.**

MULTISTATE BALLOON RIDER
04/26/04                              Page 1 of 2                    **DocMagic** *eForms*
                                                                    www.docmagic.com



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon
Rider.

4465 SW 34 TERRACE "L.L.C.," A FLORIDA LIMITED LIABILITY
COMPANY

By: _____ 4/28/16    By: _____ 4/28/16

Borrower DONALD SHOFF,              Date    Borrower JAMES STOTE,              Date
MANAGER                                      MANAGER

_____ _____    _____ _____
Borrower                            Date    Borrower                            Date

_____ _____    _____ _____
Borrower                            Date    Borrower                            Date

MULTISTATE BALLOON RIDER                     Page 2 of 2                   DocMagic EForms
04/26/04                                                                  www.docmagic.com



Loan

**EXHIBIT "B"**

PARCEL 1

2220 N. 57TH WAY

HOLLYWOOD, FL 33021

APN # 514112-19-0880

PARCEL 2

5600 FARRAGUT STREET

HOLLYWOOD, FL 33201

APN # 514101-02-0910

PARCEL 3

5606 FARRAGUT STREET

HOLLYWOOD, FL 33201

APN # 514101-02-0920

PARCEL 4

5601 HARDING STREET

HOLLYWOOD, FL 33021

APN # 514112-33-0030

PARCEL 5

4465 SW 34TH TERRACE

FORT LAUDERDALE, FL 33312

APN # 504230-04-0320

Document prepared by: Laura Collins
Record and return to: HMC Assets, LLC
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278
Reference ID: █████████

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF MORTGAGE

For value received, the undersigned hereby grants, assigns and transfers to
**HMC ASSETS, LLC SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE FOR CIVIC NPL TRUST**
all beneficial interest under that certain MORTGAGE dated 4/28/2016 executed by 4465 SW 34 TERRACE
"L.L.C.", A FLORIDA LIMITED LIABILITY COMPANY, Borrower(s), to CIVIC FINANCIAL SERVICES, LLC, as
Originating Lender, recorded on 5/2/2016 as INSTR #113667217 of Official Records in the office of the
County Recorder of Broward County, State of FL (hereinafter, the "MORTGAGE"), together with the
Promissory Note secured by said MORTGAGE and also all rights accrued or to accrue under said
MORTGAGE and Promissory Note.

Property Address: SEE EXHIBIT "B"

**Dated : JUNE 22, 2017**

HMC Assets LLC solely in its capacity as Separate
Trustee of Civic Holdings 1 Trust

By: Aaron Wright, Authorized Agent

---

A notary public or other officer completing this certificate verifies only the identity of the individual who
signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of
that document.

---

| State of | California | ) ss |
|----------|------------|------|
| County of | Los Angeles | ) |

On June 22, 2017 , before me, **Lara Topjian,** Notary Public, personally appeared Aaron Wright, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LARA TOPJIAN
Commission # 2137421
Notary Public - California
Los Angeles County
My Comm. Expires Dec 18, 2019

Page 1 of 1

## EXHIBIT "B"

**PARCEL 1**

2220 N. 57TH WAY

HOLLYWOOD, FL 33021

APN # 514112-19-0880

**PARCEL 2**

5600 FARRAGUT STREET

HOLLYWOOD, FL 33201

APN # 514101-02-0910

**PARCEL 3**

5606 FARRAGUT STREET

HOLLYWOOD, FL 33201

APN # 514101-02-0920

**PARCEL 4**

5601 HARDING STREET

HOLLYWOOD, FL 33021

APN # 514112-33-0030

**PARCEL 5**

4465 SW 34TH TERRACE

FORT LAUDERDALE, FL 33312

APN # 504230-04-0320

This Instrument Prepared By:

*CHRIS PRADO*
*2015 MANHATTAN BEACH BLVD, SUITE 106*
*REDONDO BEACH, CA 90278*

After Recording Return To:
CIVIC FINANCIAL SERVICES, INC
2015 MANHATTAN BEACH BLVD STE 106
REDONDO BEACH, CALIFORNIA 90278

———————— [Space Above This Line For Recording Data] ————————

# ASSIGNMENT OF MORTGAGE

Loan Number ███████████

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

CIVIC HOLDINGS I TRUST

whose mailing address is

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
APRIL 28, 2016                 executed by 4465 SW 34 TERRACE "L.L.C.," A
FLORIDA LIMITED LIABILITY COMPANY, 3348 WATER OAKS DRIVE,
HOLLYWOOD, FLORIDA 33021

                                                          , as mortgagor,
to CIVIC FINANCIAL SERVICES, LLC, 2015 MANHATTAN BEACH BLVD STE
106, REDONDO BEACH, CALIFORNIA 90278              , as mortgagee,
and recorded either:
☐  concurrently herewith; or
☒  on MAY 2, 2016          , as Instrument No. 113667217    in book              ,
    page            , in the Official Records in the County Recorder's office of BROWARD
    County,  FLORIDA                        , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: SEE EXHIBIT "B"

DocMagic *eForms*
www.docmagic.com

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.  The original principal amount due under this note(s) is $ 825,000.00          .

Signed, sealed and delivered in the presence of:

Witnesses:

_____

CIVIC FINANCIAL SERVICES, LLC

By: _____                                    (Seal)
    JAMES HELFRICH, VICE PRESIDENT

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

——————————————— [Space Below This Line For Acknowledgments] ———————————————

STATE OF __FLORIDA_____

COUNTY OF __BROWARD_____

      The foregoing instrument was acknowledged before me this _____ day of _____

by _____
                    (name and title of officer/partner/manager/member/agent)

of __CIVIC FINANCIAL SERVICES, LLC_____
                 (name of corporation/partner/company acknowledging)

a __CALIFORNIA_____    _____,
   (state or place of incorporation/organization)    (corporation/partnership/limited liability company)

on behalf of the _____. He/She is personally known to me
          (corporation/partnership/limited liability company)

or has produced _____ as identification.
          (Type of Identification)

_____
Signature

_____
Name of Notary

_____
(Seal)         Title

_____
Serial Number, if any

FLORIDA ASSIGNMENT OF MORTGAGE
FLAOM 09/26/11         Page 3 of 3         DocMagic eForms
www.docmagic.com

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ Los Angeles _____ )

On _____ 5/3/2016 _____ before me, ___ Melissa Salinas, notary public ___

(insert name and title of the officer)

personally appeared ___ James Helfrich _____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    **(Seal)**

MELISSA SALINAS
Commission # 2124089
Notary Public - California
Los Angeles County
My Comm. Expires Aug 20, 2019

Loan Number: ████████

Date: APRIL 28, 2016

Property Address:  SEE EXHIBIT "B"

## EXHIBIT "A"

## LEGAL DESCRIPTION

Parcel 1:

Lot 8, Block 5, BREEZE HAVEN NO. 2, according to the Plat thereof, as recorded in Plat Book 42, Page(s) 23, of the Public Records of Broward County, Florida.

Parcel 2:

Lot 19, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 3:

Lot 20, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 4:

Lot 3, Block 1, DELCREST MANOR NO. 2, according to the Plat thereof, recorded in Plat Book 61, Page 40, of the Public Records of Broward County, Florida.

Parcel 5:

Lot 35, Block 1, DAVIS ISLES, according to the plat thereof as recorded in Plat Book 29, Page 19, of the Public Records of Broward County, Florida.

A.P.N. # : SEE EXHIBIT "B"

*DocMagic eForms*
*www.docmagic.com*

This Instrument Prepared By:

After Recording Return To:
CIVIC FINANCIAL SERVICES, INC
2015 MANHATTAN BEACH BLVD STE 106
REDONDO BEACH, CALIFORNIA 90278

———————— [Space Above This Line For Recording Data] ————————

# CORRECTIVE ASSIGNMENT OF MORTGAGE

Loan Number ▮▮▮▮▮▮▮▮▮

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

HMC Assets, LLC solely in its capacity as separate trustee for Civic Holdings I Trust

whose mailing address is

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
APRIL 28, 2016       executed by 4465 SW 34 TERRACE "L.L.C.," A
FLORIDA LIMITED LIABILITY COMPANY, 3348 WATER OAKS DRIVE,
HOLLYWOOD, FLORIDA 33021

                                                              , as mortgagor,
to CIVIC FINANCIAL SERVICES, LLC, 2015 MANHATTAN BEACH BLVD STE
106, REDONDO BEACH, CALIFORNIA 90278            , as mortgagee,
and recorded either:
☐  concurrently herewith; or
☐  on 5/2/2016                , as Instrument No. 113667217       in book            ,
    page              , in the Official Records in the County Recorder's office of  BROWARD
    County,   FLORIDA          , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: SEE EXHIBIT "B"

        (THIS ASSIGNMENT IS BEING RECORDED TO CORRECT THE ASSINGEE ON THAT CERTAIN
        ASSIGNMENT WHICH RECORDED ON 5/9/2016 AS INSTRUMENT NO. 113682193)

FLORIDA ASSIGNMENT OF MORTGAGE
FLAOM  09/26/11                              Page 1 of 3                    DocMagic *eFormis*
                                                                          www.docmagic.com

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.  The original principal amount due under this note(s) is $ 825,000.00          .

Signed, sealed and delivered in the presence of:

Witnesses:

_____

CIVIC FINANCIAL SERVICES, LLC

By: _____                                    (Seal)
ANDREW JEWETT, AUTHORIZED AGENT

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FLORIDA ASSIGNMENT OF MORTGAGE
FL.AOM  09/26/11                          Page 2 of 3                          DocMagic eForms
www.docmagic.com

———————————————— [Space Below This Line For Acknowledgments] ————————————————

STATE OF __FLORIDA_____

COUNTY OF __BROWARD_____

The foregoing instrument was acknowledged before me this _____ day of _____

by _____
(name and title of officer/partner/manager/member/agent)

of __CIVIC FINANCIAL SERVICES, LLC_____
(name of corporation/partner/company acknowledging)

a __CALIFORNIA_____     _____ ,
(state or place of incorporation/organization)          (corporation/partnership/limited liability company)

on behalf of the _____ He/she is personally known to me
(corporation/partnership/limited liability company)

or has produced _____ as identification.
(Type of identification)

_____
Signature

_____
Name of Notary

(Seal)            _____
Title

_____
Serial Number, if any

FLORIDA ASSIGNMENT OF MORTGAGE
FLAOM  09/26/11                          Page 3 of 3                          DocMagic eForms
                                                                             www.docmagic.com

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of *Los Angeles* )

On *OCT 0 4 2016* before me, *Samantha M. Fisher, notary public*,
　　　 Date 　　　　　　　　　　　 *Here Insert Name and Title of the Officer*

personally appeared *Andrew Jewett*
　　　　　　　　　　　　 *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　 *Signature of Notary Public*

SAMANTHA M. FISHER
Notary Public - California
Los Angeles County
Commission # 2155177
My Comm. Expires May 29, 2020

*Place Notary Seal Above*

─────────────────── **OPTIONAL** ───────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____ Signer's Name: _____
☐ Corporate Officer — Title(s): _____ ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General ☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact ☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator ☐ Trustee ☐ Guardian or Conservator
☐ Other: _____ ☐ Other: _____
Signer Is Representing: _____ Signer Is Representing: _____

⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦⬦

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

Loan Number: ███████████

Date: APRIL 28, 2016

Property Address:  SEE EXHIBIT "B"

## EXHIBIT "A"

## LEGAL DESCRIPTION

Parcel 1:

Lot 8, Block 5, BREEZE HAVEN NO. 2, according to the Plat thereof, as recorded in Plat Book 42, Page(s) 23, of the Public Records of Broward County, Florida.

Parcel 2:

Lot 19, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 3:

Lot 20, Block 3, PLAYLAND ESTATES SECTION 1, according to the Plat thereof, as recorded in Plat Book 34, Page 43, of the Public Records of Broward County, Florida.

Parcel 4:

Lot 3, Block 1, DELCREST MANOR NO. 2, according to the Plat thereof, recorded in Plat Book 61, Page 40, of the Public Records of Broward County, Florida.

Parcel 5:

Lot 35, Block 1, DAVIS ISLES, according to the plat thereof as recorded in Plat Book 29, Page 19, of the Public Records of Broward County, Florida.

A.P.N. # : SEE EXHIBIT "B"

Document prepared by: Caroline Rhee
Record and return to: HMC Assets, LLC
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORRECTIVE AND CONFIRMATORY ASSIGNMENT OF MORTGAGE

**The purpose of recording this document is to confirm the Assignment of Mortgage recorded on May 9, 2016 as Instrument No. 113682193 and to correct the name of the Assignee in the Official Records.**

For value received, the undersigned hereby grants, assigns and transfers to HMC Assets, LLC solely in its capacity as Separate Trustee of Civic Holdings I Trust all beneficial interest under that certain Mortgage dated April 28, 2016 executed by 4465 SW 34 Terrace "L.L.C." a Florida limited liability company, Borrower(s), to CIVIC FINANCIAL SERVICES, LLC, as Originating Lender, recorded on May 2, 2016 as Instrument No. 113667217 of Official Records in the office of the County Recorder of **Broward County, State of Florida** (hereinafter, the "Mortgage"), together with the Promissory Note secured by said Mortgage and also all rights accrued or to accrue under said Mortgage and Promissory Note.

Property Address: See Exhibit B attached hereto and made a part hereof.

1

Loan ▮▮▮▮▮▮▮▮

## EXHIBIT "B"

**PARCEL 1**

    2220 N. 57TH WAY

    HOLLYWOOD, FL 33021

    APN # 514112-19-0880

**PARCEL 2**

    5600 FARRAGUT STREET

    HOLLYWOOD, FL 33201

    APN # 514101-02-0910

**PARCEL 3**

    5606 FARRAGUT STREET

    HOLLYWOOD, FL 33201

    APN # 514101-02-0920

**PARCEL 4**

    5601 HARDING STREET

    HOLLYWOOD, FL 33021

    APN # 514112-33-0030

**PARCEL 5**

    4465 SW 34TH TERRACE

    FORT LAUDERDALE, FL 33312

    APN # 504230-04-0320

Dated 10/24/2016

Civic Financial Services LLC

By: Andrew Jewett, Authorized Agent

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of          California                    ) ss
County of         Los Angeles                   )

On   OCT 2 4 2016        , before me, Samantha M. Fisher, Notary Public, personally appeared Andrew Jewett, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SAMANTHA M. FISHER
Notary Public - California
Los Angeles County
Commission # 2155177
My Comm. Expires May 29, 2020

2

\*\*\*\* FILED: BROWARD COUNTY, FL  Brenda D. Forman,  CLERK 4/11/2018 12:46:17 PM.\*\*\*\*

#34

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-17-014069

HMC ASSETS, LLC SOLELY IN ITS CAPACITY
AS SEPARATE TRUSTEE OF CIVIC HOLDINGS
I TRUST,

                Plaintiff,

vs.

4465 SW 34 TERRACE "L.L.C."; ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH, UNDER,
OR AGAINST THE HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN
PARTIES MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES, GRANTEES, OR
OTHER CLAIMANTS; UNKNOWN TENANT #1;
UNKNOWN TENANT #2; whose name is
fictitious to account for parties in possession,

                Defendants.

_____/

Filed In Open Court
CLERK OF THE CIRCUIT COURT
ON___APR 1 1 2018___
BY_____

## FINAL JUDGMENT OF MORTGAGE FORECLOSURE

**THIS CASE** came before the Court at the Case Management Conference and the hearing on Plaintiff's Motion for Summary Judgment.  On the evidence presented, it is

**ORDERED and ADJUDGED** that:

**1.** Final Judgment of Mortgage Foreclosure is entered in favor of the  Plaintiff, **HMC ASSETS, LLC SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE OF CIVIC HOLDINGS I TRUST,** whose address is c/o Servis One, Inc., d/b/a BSI Financial Services, 314 S. Franklin Street, Titusville, PA 16354, and against Defendants, **4465 SW 34 TERRACE "L.L.C."; ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, OR AGAINST THE HEREIN NAMED**

**INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; UNKNOWN TENANT #1 N/K/A LINDA SWEROLFF.**

2.    **AMOUNT DUE AND OWING.** Plaintiff, **HMC ASSETS, LLC SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE OF CIVIC HOLDINGS I TRUST**, whose address is c/o Servis One, Inc., d/b/a BSI Financial Services, 314 S. Franklin Street, Titusville, PA 16354, is due:

| | |
|---|---:|
| Principal due on the Note and Mortgage foreclosed: | $ 825,000.00 |
| Interest on the Note from 5/1/2016 – 4/11/2018 | $ 288,750.00 |
| *Interest at 18.000% from 5/1/2016 – 4/11/2018* | |
| *Per diem: $412.5000* | |
| Maturity Fee | $ 123,825.00 |
| Escrow advanced/required/Taxes | $ 5,260.00 |
| *[posted to the account on 11/14/2016]* | |
| Escrow advance/required/Taxes | $ 18,557.10 |
| *[posted to the account on 11/30/2017]* | |
| Escrow advance/required/Force Placed Homeowner's | $ 18,969.39 |
| Insurance /Hazard Insurance | |
| *[posted to the account for the period* | |
| *12/1/2016 through 2/7/2018]* | |

| | |
|---|---:|
| **Attorney's Fees**: | $ 5,883.00 |
| Finding as to reasonable number of hours: 6.20 hours | |
| Finding as to reasonable hourly rate: $215.00/hr. | |
| Hourly work: $1,333.00 | |
| Other: * Flat fee/agreed upon rate: $4,300.00 | |
| [per Affidavit of Attorney's Fees] | |

| | |
|---|---:|
| **Court Costs Now Taxed**: | |
| Clerk of Court/Filing fee for complaint, Summonses, LP | $ 2,036.00 |
| (includes portal charge) | |
| Service of process | $ 260.00 |
| Clerk of Court/Sale fees | $ 130.00 |
| SUBTOTAL: | $1,288,670.49 |

**Additional**:

| | | |
|---|---|---|
| Late fees | $ | 20,418.75 |
| NSF fee | $ | 25.00 |
| | | |
| SUBTOTAL: | $1,309,114.24 |
| Less:  Escrow balance | $ | 0.00 |
| Less:  Other | $ | 0.00 |
| | | |
| **GRAND TOTAL:** | **$1,309,114.24** |

**\* The requested attorney's fees is a flat rate fee that the firm's client has agreed to pay in this matter.  Given the amount of the fee requested and the labor expended, the Court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.**

3.      **INTEREST**.  The total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing statutory legal rate of interest pursuant to Section 55.03, Florida Statutes.

4.      **LIEN ON PROPERTY**.  Plaintiff holds a lien for the grand total sum specified in Paragraph 2 herein plus interest at the amount specified in Paragraph 3 herein.  The lien of the Plaintiff is superior in dignity to any right, title, interest, or claim of the Defendants and all persons, corporations or other entities claiming, by, through, under, or against the Defendants or any of them, and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes 720.3085 or 718.116.  The Plaintiff's lien encumbers the subject property located in **Broward County, Florida** and described, as follows:

**Parcel 1:**

LOT 8, BLOCK 5, BREEZE HAVEN NO. 2, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 42, PAGE(S) 23, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

A/K/A 2220 N. 57th Way, Hollywood, FL 33021

**Parcel 2:**

LOT 19, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

A/K/A 5600 Farragut Street, Hollywood, FL 33021

**Parcel 3:**

LOT 20, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

A/K/A 5606 Farragut Street, Hollywood, FL 33201

**Parcel 4:**

LOT 3, BLOCK 1, DELCREST MANOR NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 61, PAGE 40, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

A/K/A 5601 Harding Street, Hollywood, FL 33021

**Parcel 5:**

LOT 35, BLOCK 1, DAVIS ISLES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 19, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

A/K/A 4465 SW 34TH Terrace, Fort Lauderdale, FL 33312

**5.    SALE OF PROPERTY**.  If the grand total amount set forth in Paragraph 2 herein with interest at the rate set forth in Paragraph 3 herein and all costs accrued subsequent to this judgment are not paid, the Clerk of this Court shall sell the property at public sale on **the  14th  day of   May   , 2018** to the highest bidder for cash, except as prescribed in Paragraph 6, after having first given notice as required by Section 45.031, Florida Statutes, by electronic sale beginning at **10:00 a.m**. **EST** online at www.broward.realforeclose.com.

**6.    COSTS**.  Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title.  If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

**7.    DISTRIBUTION OF PROCEEDS**.  On filing the Certificate of Title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorney's fees; fourth, the total sum due the Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 3 from this date to the date of the sale; and by retaining any remaining amount pending the further Order of this Court.

**8.    RIGHT OF POSSESSION**.  On filing the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any.  Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

**9.    JURISDICTION**.  The Court retains jurisdiction of this action to enter further orders that are proper, including, but not limited to, orders authorizing supplemental proceedings to eliminate any interest omitted from this action, to cure any title defects, orders arising out of re-foreclosure, orders permitting a supplemental complaint, orders involving the reformation of the mortgage instrument or deed, an order to enforce the Order Granting Plaintiff's Motion for Enforcement of Assignment of Leases and Assignment of Rents, orders authorizing writs of possession and an award of attorney's fees, and to enforce the adequate protection ordered, if applicable. The Court further retains jurisdiction in this matter to address any issues of entitlement, rights, or obligations under Chapters 718 or 720, Florida Statutes, of the parties to this action, their successors or assigns.

The Court also reserves jurisdiction in the event additional sums are expended by Plaintiff to protect its interest in the property after entry of this Judgment including, but not limited to, real estate taxes, hazard insurance, property preservation, or other necessary costs.  Plaintiff may file an Affidavit setting forth such expenditures and the Court may enter an Order awarding the Plaintiff the amount expended and add it to the grand total

amount due under this Final Judgment, or if the property has been redeemed by payment of the Judgment, the Court can enter a new foreclosure Judgment for the same amount.

**10.    OTHER.** Notwithstanding any post-Judgment interest that will be due after the date of this Judgment to the date of the sale, if there are objections to the sale filed or other matters that would delay disbursement of the sale proceeds past the eleventh day after the sale, Plaintiff shall be entitled to interest at the rate set forth in Paragraph 2 herein from this date to the actual date of issuance of the Certificate of Disbursements, and Certificate of Title. *The Clerk of Court is hereby directed to issue a certificate of sale for each parcel.*

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, BRENDA D. FORMAN, 201 S.E. 6TH STREET, FT. LAUDERDALE, FL 33301, 954-831-6938, WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.**

**IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL AID SERVICE OF BROWARD COUNTY, INC, 491 NORTH STATE ROAD 7, PLANTATION, FL 33317, 954-765-8950 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL AID SERVICE OF BROWARD COUNTY, INC, 491 NORTH STATE ROAD 7, PLANTATION, FL 33317, 954-765-8950 FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

　　　　**DONE AND ORDERED** in Broward County, Florida on ___4/11/18___.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　**CIRCUIT COURT JUDGE**

A copy of this Order shall be served upon interested parties in accordance with the Service List made a part of this Order.

## SERVICE LIST

4465 SW 34 TERRACE "L.L.C."
C/O REGISTERED AGENT, JAMES STOTE
4465 SW 34 TERRACE
FORT LAUDERDALE, FL 33312

UNKNOWN PARTIES IN POSSESSION
2220 N. 57TH WAY
HOLLYWOOD, FL 33021

UNKNOWN TENANT #1 N/K/A LINDA SWEROLFF
2220 N. 57TH WAY
HOLLYWOOD, FL 33021

UNKNOWN PARTIES IN POSSESSION
5600 FARRAGUT STREET
HOLLYWOOD, FL 33021

**DEFENDANT FAILED TO
APPEAR**

Final Judgment of Mortgage Foreclosure
Case No.: CACE-17-014069
Page 7 of 8

π-Ashland Medley, Esq. FBN 89576

UNKNOWN PARTIES IN POSSESSION
5606 FARRAGUT STREET
HOLLYWOOD, FL 33021

UNKNOWN PARTIES IN POSSESSION
5601 HARDING STREET
HOLLYWOOD, FL 33021

UNKNOWN PARTIES IN POSSESSION
4465 SW 34 TERRACE
FORT LAUDERDALE, FL 33312

ASHLAND MEDLEY LAW, PLLC
2856 NORTH UNIVERSITY DRIVE
CORAL SPRINGS, FL 33071
FLESERVICE@ASHLANDMEDLEYLAW.COM



MARTY KIAR
BROWARD
COUNTY
PROPERTY APPRAISER

| Site Address | 2220 N 57 WAY, HOLLYWOOD FL 33021-3829 | ID # | 5141 12 19 0880 |
|---|---|---|---|
| Property Owner | 4465 SW 34 TERRACE LLC | Millage | 0513 |
| Mailing Address | 4465 SW 34 TER FORT LAUDERDALE FL 33312 | Use | 01 |
| Abbr Legal Description | BREEZE HAVEN NO 2 42-23 B LOT 8 BLK 5 | | |

The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).

### Property Assessment Values

| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| 2018 | $59,950 | $188,640 | $248,590 | $217,370 | |
| 2017 | $39,970 | $174,600 | $214,570 | $197,610 | $4,460.46 |
| 2016 | $39,970 | $139,680 | $179,650 | $179,650 | $4,052.85 |

### 2018 Exemptions and Taxable Values by Taxing Authority

| | County | School Board | Municipal | Independent |
|---|---|---|---|---|
| Just Value | $248,590 | $248,590 | $248,590 | $248,590 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH | $217,370 | $248,590 | $217,370 | $217,370 |
| Homestead | 0 | 0 | 0 | 0 |
| Add. Homestead | 0 | 0 | 0 | 0 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $217,370 | $248,590 | $217,370 | $217,370 |

### Sales History

| Date | Type | Price | Book/Page or CIN |
|---|---|---|---|
| 6/30/2015 | QC*-T | $100 | 113101847 |
| 3/25/2013 | QCD-T | $100 | 111425761 |
| 4/1/1993 | QCD | $100 | 20536 / 435 |
| 11/1/1992 | QCD | $100 | |
| 7/1/1987 | WD | $79,500 | |

* Denotes Multi-Parcel Sale (See Deed)

### Land Calculations

| Price | Factor | Type |
|---|---|---|
| $9.00 | 6,661 | SF |
| | | |
| | | |

| | |
|---|---|
| Adj. Bldg. S.F. (Card, Sketch) | 1492 |
| Units/Beds/Baths | 1/2/2 |
| Eff./Act. Year Built: 1959/1958 | |

### Special Assessments

| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
|---|---|---|---|---|---|---|---|---|
| 05 | | | | | | | | |
| R | | | | | | | | |
| 1 | | | | | | | | |

## COMPOSITE EXHIBIT "C"



## MARTY KIAR
## BROWARD COUNTY PROPERTY APPRAISER

| Site Address | 5600 FARRAGUT STREET, HOLLYWOOD FL 33021 | ID # | 5141 01 02 0910 |
|---|---|---|---|
| Property Owner | 4465 SW 34 TERRACE LLC | Millage | 0513 |
| Mailing Address | 4465 SW 34 TER FORT LAUDERDALE FL 33312 | Use | 01 |
| Abbr Legal Description | PLAYLAND ESTATES SEC 1 34-43 B LOT 19 BLK 3 | | |

The just values displayed below were set in compliance with **Sec. 193.011**, Fla. Stat., and include a reduction for costs of sale and other adjustments required by **Sec. 193.011(8)**.

### Property Assessment Values

| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| 2018 | $55,800 | $93,210 | $149,010 | $125,290 | |
| 2017 | $37,200 | $86,310 | $123,510 | $113,900 | $2,663.91 |
| 2016 | $37,200 | $66,350 | $103,550 | $103,550 | $2,430.09 |

### 2018 Exemptions and Taxable Values by Taxing Authority

| | County | School Board | Municipal | Independent |
|---|---|---|---|---|
| Just Value | $149,010 | $149,010 | $149,010 | $149,010 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH | $125,290 | $149,010 | $125,290 | $125,290 |
| Homestead | 0 | 0 | 0 | 0 |
| Add. Homestead | 0 | 0 | 0 | 0 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $125,290 | $149,010 | $125,290 | $125,290 |

### Sales History

| Date | Type | Price | Book/Page or CIN |
|---|---|---|---|
| 6/30/2015 | QC*-T | $100 | 113101847 |
| 11/18/2014 | DRR-T | | 112668209 |
| 5/10/2014 | QCD-T | $100 | 112388546 |
| 7/16/2013 | QCD-T | $100 | 111674197 |
| 6/9/2006 | QCD | $100 | 42186 / 1004 |

* Denotes Multi-Parcel Sale (See Deed)

### Land Calculations

| Price | Factor | Type |
|---|---|---|
| $9.00 | 6,200 | SF |
| | | |
| | | |

| | |
|---|---|
| Adj. Bldg. S.F. (Card, Sketch) | 927 |
| Units/Beds/Baths | 1/2/1 |
| Eff./Act. Year Built: 1955/1954 | |

### Special Assessments

| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
|---|---|---|---|---|---|---|---|---|
| 05 | | | | | | | | |
| R | | | | | | | | |
| 1 | | | | | | | | |



# MARTY KIAR
## BROWARD COUNTY
### PROPERTY APPRAISER

| | | | |
|---|---|---|---|
| **Site Address** | 5606 FARRAGUT STREET, HOLLYWOOD FL 33021 | **ID #** | 5141 01 02 0920 |
| **Property Owner** | 4465 SW 34TH TERRACE LLC | **Millage** | 0513 |
| **Mailing Address** | 4465 SW 34 TER FORT LAUDERDALE FL 33312 | **Use** | 01 |
| **Abbr Legal Description** | PLAYLAND ESTATES SEC 1 34-43 B LOT 20 BLK 3 | | |

The just values displayed below were set in compliance with **Sec. 193.011**, Fla. Stat., and include a reduction for costs of sale and other adjustments required by **Sec. 193.011(8)**.

### Property Assessment Values

| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| **2018** | $55,800 | $96,760 | $152,560 | $128,390 | |
| **2017** | $37,200 | $89,540 | $126,740 | $116,720 | $2,725.50 |
| **2016** | $37,200 | $68,910 | $106,110 | $106,110 | $2,484.69 |

### 2018 Exemptions and Taxable Values by Taxing Authority

| | County | School Board | Municipal | Independent |
|---|---|---|---|---|
| **Just Value** | $152,560 | $152,560 | $152,560 | $152,560 |
| **Portability** | 0 | 0 | 0 | 0 |
| **Assessed/SOH** | $128,390 | $152,560 | $128,390 | $128,390 |
| **Homestead** | 0 | 0 | 0 | 0 |
| **Add. Homestead** | 0 | 0 | 0 | 0 |
| **Wid/Vet/Dis** | 0 | 0 | 0 | 0 |
| **Senior** | 0 | 0 | 0 | 0 |
| **Exempt Type** | 0 | 0 | 0 | 0 |
| **Taxable** | $128,390 | $152,560 | $128,390 | $128,390 |

### Sales History

| Date | Type | Price | Book/Page or CIN |
|---|---|---|---|
| 8/26/2015 | WD-D | $76,500 | 113197177 |
| 2/17/1995 | QCD | $100 | 23152 / 328 |
| 2/1/1975 | WD | $32,133 | 6130 / 729 |
| 11/1/1974 | WD | $26,200 | |
| | | | |

### Land Calculations

| Price | Factor | Type |
|---|---|---|
| $9.00 | 6,200 | SF |
| | | |
| | | |

| | |
|---|---|
| **Adj. Bldg. S.F.** (Card, Sketch) | 899 |
| **Units/Beds/Baths** | 1/2/1 |
| **Eff./Act. Year Built: 1959/1954** | |

### Special Assessments

| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
|---|---|---|---|---|---|---|---|---|
| 05 | | | | | | | | |
| R | | | | | | | | |
| 1 | | | | | | | | |


MARTY KIAR
BROWARD
COUNTY
PROPERTY APPRAISER

| Site Address | 5601 HARDING STREET, HOLLYWOOD FL 33021 | ID # | 5141 12 33 0030 |
|---|---|---|---|
| Property Owner | 4465 SW 34 TERRACE LLC | Millage | 0513 |
| Mailing Address | 4465 SW 34 TER FORT LAUDERDALE FL 33312 | Use | 01 |
| Abbr Legal Description | DELCREST MANOR NO 2 61-40 B LOT 3 BLK 1 | | |

The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).

| | | Property Assessment Values | | | |
|---|---|---|---|---|---|
| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
| 2018 | $62,470 | $139,320 | $201,790 | $186,190 | |
| 2017 | $41,650 | $128,980 | $170,630 | $169,270 | $3,766.51 |
| 2016 | $41,650 | $112,240 | $153,890 | $153,890 | $3,503.54 |

| 2018 Exemptions and Taxable Values by Taxing Authority | | | | |
|---|---|---|---|---|
| | County | School Board | Municipal | Independent |
| Just Value | $201,790 | $201,790 | $201,790 | $201,790 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH | $186,190 | $201,790 | $186,190 | $186,190 |
| Homestead | 0 | 0 | 0 | 0 |
| Add. Homestead | 0 | 0 | 0 | 0 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $186,190 | $201,790 | $186,190 | $186,190 |

| Sales History | | | |
|---|---|---|---|
| Date | Type | Price | Book/Page or CIN |
| 6/30/2015 | QC*-T | $100 | 113101847 |
| 11/18/2014 | DRR-T | | 112668210 |
| 5/10/2014 | QCD-T | $100 | 112388544 |
| 7/16/2013 | QCD-T | $100 | 111674196 |
| 10/5/2011 | QCD-T | $100 | 48254 / 1218 |

* Denotes Multi-Parcel Sale (See Deed)

| Land Calculations | | |
|---|---|---|
| Price | Factor | Type |
| $9.00 | 6,941 | SF |
| | | |
| | | |
| Adj. Bldg. S.F. (Card, Sketch) | | 1342 |
| Units/Beds/Baths | | 1/2/2 |
| Eff./Act. Year Built: 1967/1966 | | |

| | | | | Special Assessments | | | | |
|---|---|---|---|---|---|---|---|---|
| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
| 05 | | | | | | | | |
| R | | | | | | | | |
| 1 | | | | | | | | |



MARTY KIAR
BROWARD
COUNTY
PROPERTY APPRAISER

| Site Address | 4465 SW 34 TERRACE, DANIA BEACH FL 33312 | ID # | 5042 30 04 0320 |
|---|---|---|---|
| Property Owner | 4465 SW 34 TERRACE LLC | Millage | 0413 |
| Mailing Address | 4465 SW 34 TER FORT LAUDERDALE FL 33312 | Use | 01 |
| Abbr Legal Description | DAVIS ISLES 29-19 B LOT 35 BLK 1 | | |

The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).

### Property Assessment Values

| Year | Land | Building / Improvement | Just / Market Value | Assessed / SOH Value | Tax |
|---|---|---|---|---|---|
| 2018 | $136,500 | $193,610 | $330,110 | $330,110 | |
| 2017 | $136,500 | $193,610 | $330,110 | $330,110 | $7,009.45 |
| 2016 | $122,850 | $193,610 | $316,460 | $316,460 | $6,859.14 |

### 2018 Exemptions and Taxable Values by Taxing Authority

| | County | School Board | Municipal | Independent |
|---|---|---|---|---|
| Just Value | $330,110 | $330,110 | $330,110 | $330,110 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH | $330,110 | $330,110 | $330,110 | $330,110 |
| Homestead | 0 | 0 | 0 | 0 |
| Add. Homestead | 0 | 0 | 0 | 0 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $330,110 | $330,110 | $330,110 | $330,110 |

### Sales History

| Date | Type | Price | Book/Page or CIN |
|---|---|---|---|
| 3/31/2015 | WD-T | $100 | 112911138 |
| 7/16/2013 | QCD-T | $100 | 111674198 |
| 10/18/2010 | WD-Q-SS | $196,000 | 47478 / 1093 |
| 4/28/2009 | QCD-T | $100 | 46228 / 1881 |
| 11/19/2007 | QCD | $100 | 44857 / 1 |

### Land Calculations

| Price | Factor | Type |
|---|---|---|
| $12.00 | 11,375 | SF |
| | | |
| | | |

| Adj. Bldg. S.F. (Card, Sketch) | 1939 |
|---|---|
| Units/Beds/Baths | 1/3/2 |
| Eff./Act. Year Built: 1975/1974 | |

### Special Assessments

| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |
|---|---|---|---|---|---|---|---|---|
| 04 | V | | | | | DS | | |
| R | | | | | | | | |
| 1 | | | | | | 1 | | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                                           Chapter 11
                                                               Case No.: 18-18906-JKO

4465 SW 34 Terrace "LLC",

　　　Debtor.
_____/

**ORDER GRANTING BSI FINANCIAL SERVICES'**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**TO ENFORCE FINAL JUDGMENT OF MORGTAGE FORECLOSURE**

　　　**THIS MATTER** came before the Court without necessity of a hearing upon BSI

Financial Services, as Servicing Agent for HMC Assets, LLC, solely in its Capacity as Civic

NPL Trust's Motion for Relief From the Automatic Stay to Enforce Final Judgment of

Foreclosure, or, in the Alternative, For Adequate Protection [D.E. ___] (the "Motion").  The

Court, pursuant to Local Rule 2002-4, having considered this Motion without further notice or

hearing as no party in interest has filed an objection within the fourteen (14) days from the date

that the Motion was entered on the docket, and being otherwise duly advised in the premises, it

is, hereby

**EXHIBIT "D"**

**ORDERED,** as follows:

1.      The Motion is **GRANTED**, as set forth herein.

2.      The Automatic Stay is lifted to allow BSI Financial Services, as Servicing Agent for HMC Assets, LLC, solely in its Capacity as Civic NPL Trust ("Secured Creditor"), so as to allow Secured Creditor to enforce its Final Judgment of Mortgage Foreclosure and allow the state court to enter all necessary orders, judgments, and decrees associated therewith, on real properties legally described as follows:

PARCEL 1

**LOT 8, BLOCK 5, BREEZE HAVEN NO. 2, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 42, PAGE (S) 23, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 2220 N. 57TH WAY, HOLLYWOOD, FL 33021**

PARCEL 2

**LOT 19, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5600 FARRAGUT STREET, HOLLYWOOD, FL 33021**

PARCEL 3

**LOT 20, BLOCK 3, PLAYLAND ESTATES SECTION 1, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 34, PAGE 43, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5606 FARRAGUT STREET, HOLLYWOOD, FL 33021**

PARCEL 4

**LOT 3, BLOCK 1, DELCREST MANOR NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 61, PAGE 40, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A 5601 HARDING STREET, HOLLYWOOD, FL 33021**

PARCEL 5

**LOT 35, BLOCK 1, DAVIS ILSES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 29, PAGE 19, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

**A/K/A/ 4465 S.W. 34TH TERRACE, FORT LAUDERDALE, FL 33312**

3.      This relief is *in rem* only in order to complete state court foreclosure proceedings through certificate of title and possession of the Properties; however, BSI Financial Services, as Servicing Agent for HMC Assets, LLC, solely in its Capacity as Civic NPL Trust shall not seek any *in personam* relief against the debtor without further order of the Court.

4.      The Court waives the time requirements under Rule 4001(a)(3) and deems the relief from stay effective immediately.

5.      Secured Creditor is granted security interest in all of the rental proceeds generated by the Properties so as to allow it to pursue said interest in state court proceedings and to allow state court to enter all necessary orders, judgments, and decrees with respect to said security interests.

6.      The Court shall retain jurisdiction over this matter to consider and enter such further relief necessary to enforce the terms and conditions of this Order.

###

Submitted by:

Chase A. Berger, Esq.
Florida Bar No. 083794
cberger@ghidottiberger.com
**GHIDOTTI | BERGER, LLP**
3050 Biscayne Boulevard - Suite 402, Miami, Florida 33137
Telephone: (305) 501.2808 / Facsimile: (954) 780.5578

**Copies furnished to:**
Chase A. Berger, Esq.
Mr. Berger is directed to serve a conformed copy of this Order upon all interested parties and to file a Certificate of Service within three (3) days from the date of this Order.